IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES OPHEIM, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CASE NO. 3:16-CV-1097-N-BK |
| | § | |
| WELLS FARGO BANK, and | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3*, The Court considers Defendants' *Motion to Dismiss*, Doc. 5. For the reasons that follow, it is recommended that the motion be **GRANTED IN PART**.

**A. Procedural History**

Plaintiff filed this action on March 25, 2016, in the 161st Judicial District Court of Dallas County. Doc. 1-4 at 1. He alleges that he obtained a home equity loan in 2007 that was subsequently assigned to Defendant Wells Fargo Bank ("Wells Fargo") and serviced by a company that Defendant Ocwen Loan Servicing, LLC ("Ocwen" or, collectively, "Defendants") later acquired. Doc. 1-4 at 4. Plaintiff claims that in December 2010, he was advised that his loan was in default, which occurred when Ocwen wrongfully obtained lender-placed insurance ("LPI") on his home even though he had maintained insurance coverage on the property. Doc. 1-4 at 5. Plaintiff asserts that his loan payments were deposited thereafter into an unauthorized escrow account to pay for the LPI. Doc. 1-4 at 5-6. Plaintiff alleges that while Defendants eventually cancelled the LPI in February 2011, they continued to assert that he was in default and credited the refunded premiums to the escrow account, rather than towards Plaintiff's loan payments, until April 2011. Doc. 1-4 at 6-7. Additionally, Plaintiff avers that his attempts to

secure financing from alternate sources were thwarted because Defendants had reported his purportedly delinquent loan to a credit reporting agency. Doc. 1-4 at 6-7. Plaintiff maintains that he was notified that his loan was in default despite his repeated demands over a four-year period that Defendants rectify the situation, and Defendants have refused to correct the improper accounting of his loan and, instead, forcibly evicted him from his home. Doc. 1-4 at 7. Plaintiff concludes that in November 2015, Wells Fargo commenced an expedited foreclosure proceeding in Texas state court based on a loan balance that was incorrect due to the alleged mishandling of the loan. Doc. 1-4 at 7-8.

      Based on these contentions, Plaintiff asserts causes of action for: (1) breach of contract[1]; (2) the common law tort of unreasonable debt collection; (3) negligence; (4) violation of the Texas Debt Collection Act, §§ 393.303 and 393.304; and (5) a declaratory judgment to the effect that Defendants failed to properly apply his loan payments and misstated that the loan was in default. Doc. 1-4 at 8-15. Defendants removed the case to this Court on April 22, 2016, and now move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 5.

**B. Applicable Law**

      A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted).

---

[1] This cause of action is asserted only against Wells Fargo. *See* Doc. 1-4 at 8. The remaining causes of action are asserted against both Defendants. *See* Doc. 1-4 at 10-15.

### C. Parties' Arguments

Defendants assert that Plaintiff's claims are barred by the respective statutes of limitation because all of his claims came into existence and caused a legal injury by April 2011, but Plaintiff did not file his complaint until March 2016. Doc. 5 at 5-6. With respect to Plaintiff's claims for negligence and unreasonable collection efforts, Defendants argue that those claims are also barred by the economic loss rule. Doc. 5 at 6-7.

Plaintiff responds that his claims are not time barred because the date of accrual is that of the commencement of the foreclosure action in November 2015. Doc. 7 at 2. Additionally, Plaintiff asserts that the continuing violation doctrine applies because he had an ongoing relationship with Defendants, and their tort and breach of contract actions continued as Defendants deemed his loan in default and reported him to credit reporting agencies up through the date the foreclosure action was filed. Doc. 7 at 2-4.

Plaintiff argues that the economic loss doctrine does not apply to his claims of negligence and unreasonable collection efforts because he has alleged damages arising from Defendants' misconduct that exceeded contractual remedies, including being unable to obtain alternative financing, emotional distress, and damage to his credit. Doc. 7 at 4-5.

Defendants reply that continuing violation principles do not apply to defeat the bar to Plaintiff's claims because (1) as to the contract claim, no "continuing contract" existed since a mortgage loan is not an obligation that is divided into several parts; and (2) as to the tort claims, they arise from a single act, namely Defendants' failure to correctly credit the refunded LPI premium. Doc. 8 at 1-3.

 D.  Analysis

    *1.  Negligence and Unreasonable Collection Efforts*

    Defendants argue that Plaintiff's claims for negligence and unreasonable collection efforts violate the economic loss doctrine.  The economic loss rule generally precludes recovery in tort where a plaintiff's only injury is an economic loss to the subject of a contract.  *Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W.3d 529, 541 (Tex.App. – Tyler 2008) (citing *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)).  "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  The doctrine restricts contracting parties to contractual remedies for such economic losses, even when the breach may be viewed as a consequence of a contracting party's negligence.  *Id.*  "If the action depends entirely on pleading and proving the contract in order to establish a duty, the action remains one for breach of contract only, regardless of how it is framed by the pleadings." *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex.App. – Tyler, 2003).  Thus, in order for a viable tort claim to arise out of a contractual duty, the liability must be independent of the fact that a contract exists between the parties, and the defendant must breach a duty imposed by law rather than by the contract.  *DeLanney*, 809 S.W.2d at 494.

    Although Plaintiff attempts to circumvent the economic loss rule by framing Defendants' tortious conduct as causing him anxiety, embarrassment, and financial difficulty, such claims stem from the parties' contract.  *Henderson v. Wells Fargo Bank, N.A.*, 974 F.Supp.2d 993, 1011 (N.D. Tex. 2013) (applying economic loss rule to claims that the mortgagee did not correctly account for the plaintiff's loan payments, correct inaccuracies in his loan and escrow account,

and sufficiently inform him about an ongoing investigation); *Owens v. BAC Home Loans Servicing, L.P.*, No. H-11-2742, 2013 WL 1345209, at *4 (S.D. Tex. Mar. 30, 2013) (holding that in the mortgage foreclosure context, injuries such as loss of title and damage to one's credit are barred by the economic loss rule because they are the subject of the mortgage contract with the defendants).

The damages Plaintiff alleges he experienced with respect to his claims for negligence and unreasonable collection efforts arise from the purported breach of a duty created under the parties' contract, i.e. the loan documents. For example, Plaintiff contends that Defendants were negligent and engaged in unreasonable collection efforts when they: (1) "failed to apply loan payments received to the outstanding principal and legally accrued interest"; (2) incurred unauthorized costs and expenses not allowed by the loan documents; (3) demanded additional payments from Plaintiff that were not due and informed him that his loan was delinquent; (4) falsely reported him to credit reporting agencies and then failed to rectify the errors; (5) retained funds in an escrow account that he never authorized; (6) failed to properly account for a payment he had made and thereafter assessing interest and penalty charges beyond the amounts authorized by the loan documents or applicable law; and (7) threatened him with foreclosure twice and ultimately foreclosed in an attempt to collect a debt that he did not owe. Doc.1-4 at 10-12.

All of these allegations ultimately stem from Plaintiff's contention that Defendants did not comply with the terms of the parties' contract in regard to the disbursement of his loan payments and the handling of the LPI and escrow issues. The liability that Plaintiff wishes to impose in this case does not arise independent of the fact that there is a contract which existed between the parties. Based on Plaintiff's allegations, Defendants did not breach a duty imposed by law rather than by the contract itself. *DeLanney*, 809 S.W.2d at 494. As a result, Plaintiff's

claims for negligence and unreasonable collection efforts are barred as a matter of law by the economic loss rule and should be **DISMISSED WITH PREJUDICE**.

   *2. Breach of Contract*

   Defendants argue that Plaintiff's breach of contract action accrued in April 2011, when all of the facts underlying Plaintiff's claims had come into existence and caused a legal injury, "even if Plaintiff had not yet learned of the injury or if all resulting damages had not yet occurred." Doc. 5 at 5. Consequently, Defendants maintain, Plaintiff's breach of contract claim, brought on March 25, 2016, is clearly outside of the statute of limitations. Doc. 5 at 5-6.

   A four-year limitations period applies to Plaintiff's breach of contract claim. *Beavers v. Met. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citing TEX. CIV. PRAC. & REM. CODE §16.051 (providing a four-year statute of limitations for "[e]very action for which there is no express limitations period"). "Under Texas law, the question of when a cause of action accrues is a matter of law for the court to decide." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566-67 (Tex. 2001)). The accrual of a breach of contract claim is governed by the legal injury rule. *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Under that rule, "'a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Id.* (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). A legal injury is defined as an injury that gives rise to a cause of action "by reason of its being an invasion of a plaintiff's right." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (quotation omitted). As such, claims for breach of contract typically accrue when the contract is breached. *Smith*, 490 F.3d at 387. This is so even

6

if Plaintiff did not know the extent of the injury or whether all resulting damages had occurred. *Id.*

Here, while the foreclosure did not happen until November 2015, Plaintiff clearly was aware of the alleged wrongfulness of Defendants' actions in placing the LPI in late 2010 when, as he asserts in his complaint, Wells Fargo notified him the mortgage loan was in default and, upon his inquiry, he learned that his loan payments had been diverted to an escrow account to pay for the LPI. Doc. 1-4 at 5. However, liberally construing Plaintiff's *pro se* complaint and response to the dismissal motion, he asserts that his contract claim is not barred due to the continuing violation theory. *See, e.g.*, Doc. 1-4 at 7 ("Over a four year period, despite repeated demands, defendants have failed and refused to rectify the improper accounting"); Doc. 1-4 at 7-8 ("In November 2015, basing their position on the incorrect loan balance and payments made ... Wells Fargo, N.A. commenced a foreclosure action"); Doc. 7 at 2-3 ("Defendants however ignore the fact that the misconduct of the defendants continued long after [the LPI was instituted] and culminated in the commencement of a foreclosure action against plaintiff [in] November 2015") and ("In the instant case, the allegations of the complaint, accepted as true, establish that the breach of the contract, and the tortuous [sic] conduct of the defendants continued on an ongoing basis" and "defendants continued, month after month to deem the loan in default").

Defendants urge that their alleged failure to credit the refunded LPI premiums to Plaintiff's principal and interest payments instead of his escrow account, caused the sole harm in this case; namely, Plaintiff was deemed to have defaulted on the loan in February 2011. Doc. 8 at 2-3. The Court finds, however, that the case on which Defendants rely in support of their arguments is distinguishable from the instant case. Doc. 8 at 2-3 (citing *Krohn v. Marcus Cable Assocs., L.P.*, 201 S.W.3d 876, 880 (Tex.App. – Waco 2006)). In *Krohn*, the plaintiffs alleged

one wrongful act—the placement of a cable line across their property—which caused the continuing injury. 201 S.W.3d at 880-881. The appellate court held as a matter of law that defendant's trespass was not a continuing tort. *Id.* Defendants analogize that their allegedly wrongful act of failing to credit the refunded LPI premiums to Plaintiff's principal and interest payments instead of his escrow account, caused the sole harm in this case; namely Defendants deemed him in default on the loan. Doc. 8 at 2-3. But the instant case presents a different factual scenario.

The more analogous and relevant case is *Howard v. CitiMortgage*, No. 13-CV-543-KS-MTP, 2014 WL 6802550, at *7 (S.D. Miss. 2014). In that case, the district court analyzed a complaint that contained several allegations of repeated wrongful conduct which the court held plausibly implicated the existence of a continuing tort or breach of contract. 2014 WL 6802550, at *7. In particular, the plaintiffs alleged that the defendant had wrongfully created an escrow account without proper notice, billed for escrow balances and failed to properly credit the escrow account, and failed to correct the account by fixing the charges. *Id.* at *6. The defendant moved for dismissal pursuant to Rule 12(b)(6), arguing that the plaintiffs' complaint was time-barred because the last misrepresentation identified in their complaint was made more than four years prior to the filing of the case. The court rejected the defendant's argument because it was not clear whether any of the communications had occurred before the limitations period expired. *Id.* at *7.

The court observed that the plaintiffs' complaint plausibly implicated the existence of a continuing tort or breach of contract in that it contained numerous allegations of repeated wrongful conduct such as: (1) there had been more than 48 inspections of the property by the defendant solely to inflict unnecessary charges on the plaintiffs' account; (2) the defendant had

been presented with sufficient information to fix the plaintiffs' account on numerous occasions but failed to do so; (3) the plaintiffs were already paying their own escrow when the defendant took over the servicing of the loan, and the plaintiffs had repeatedly produced proof to the defendant that they had paid taxes and insurance on the home, but the defendant continued to bill for an escrow account that the plaintiffs did not owe; (4) the defendant represented to the plaintiffs that there were errors in their account which they were fixing and that plaintiffs' payment was current, but then marked the plaintiffs' mortgage ready for foreclosure; (5) the defendant failed to properly apply the plaintiffs' payments, improperly overcharged the plaintiffs for their mortgage payments, and improperly refused to accept the plaintiffs' mortgage payments; and (6) despite the plaintiffs' multiple attempts to demonstrate that they had paid their own taxes and insurance, the defendant refused to alter the mortgage status and wrongfully charged corporate advances and property preservation fees upon the plaintiffs' mortgage which they did not owe. *Id.* The court concluded that the parties could revisit the untimeliness argument after discovery in summary judgment briefing. *Id.* at *8.

A similar scenario exists in this case. Plaintiff alleges that Defendants wrongfully placed LPI on his home, deemed his payments to be in default, reported his alleged default to credit reporting agencies, refused to correct his account over a four-year span, and ultimately evicted him and foreclosed on his home. Doc. 1-4 at 5-8. As in *Howard*, the Court should decline to dismiss Plaintiff's breach of contract claim as time-barred. 2014 WL 6802550, at *7; *see also Lucas v. Evans*, No. 16-CV-10-KS-MTP, 2016 WL 1178768, at *1 (S.D. Miss. Mar. 24, 2016) (finding that the plaintiff had stated a claim of continuing breach of contract where he alleged, and provided evidence, that the defendants had missed every payment owed, including at least one that fell within the statute of limitations) *cf. Perez v. Laredo Jr. Coll.*, 706 F.2d 731, 733-34

(5th Cir. 1983) (holding that the continuing violation doctrine did not apply where the plaintiff had complained only once about not receiving a raise, as that act alleged a single violation underlying his discrimination, due process, retaliation and *ex post facto* claims).  Accordingly, Defendants' *Motion to Dismiss* Plaintiff's breach of contract claim should be **DENIED**.

    *3.  TDCA Claims*

The statute of limitations for violations of the TDCA is two years. *Duzich v. Marine Office of America Corp.*, 980 S.W.2d 857, 872 (Tex.App. – Corpus Christi, 1998).  In relation to his TDCA complaints, Plaintiff again admits early notice of Defendants' allegedly illegal acts, stating that in March 2011, Defendants notified Plaintiff that his loan was again in default and, at approximately the same time, his attempts to obtain alternative financing failed "because defendants had [falsely] reported his loan . . . to be in default . . . to credit reporting agencies." Doc. 1-4 at 6-7; Doc. 1-4 at 13-14.  However, Plaintiff asserts other instances of TDCA misconduct as well, including Defendants' repeated attempts to collect amounts that were not accurate, use of a deceptive means to collect a debt by misapplying payments received, and misrepresentations regarding the amount or character of the debt. Doc. 1-4 at 13-14.  The Court cannot determine with certainty whether Plaintiff's TDCA claims are time-barred.

Plaintiff makes numerous allegations under the operative statutes, some of which appear to have occurred on the foreclosure date or in the period leading up to that event. *See* Doc. 1-4 at 13-14 (asserting, *inter alia*, that Defendants attempted to collect excessive interest charges and used a deceptive means to collect a debt, ultimately resulting in the foreclosure of the property). Even if some of the discrete events underlying the TDCA violations occurred more than two years before Plaintiff's filing date, based on the allegations in the petition, it is likely that some did not.  Thus, it is appropriate to consider which, if any, of Plaintiff's TDCA claims are time-

barred by way of a motion for summary judgment after the parties' have had an opportunity to conduct discovery, rather than in a motion to dismiss for failure to state a claim.  *See Howard, 2014 WL 6802550, at \*7* (holding that where some claims of wrongful conduct in a foreclosure case may have occurred before the limitations period had expired and some may have occurred afterwards, the timeliness issue would be more properly disposed of at the summary judgment stage, rather than pursuant to Rule 12(b)(6)).

     4.  *Declaratory Judgment*

Plaintiff seeks a declaratory judgment to the effect that he properly made all of his loan payments, maintained insurance, and paid property taxes, but Defendants did not properly apply those payments and misstated that the loan was in default.  Because a declaratory judgment action is a procedural device used to determine substantive rights, the court must look to the legal remedy underlying the cause of action to determine the applicable limitations period.  *Priester v. Long Beach Mortg. Co.*, No. 10-CV-641, 2011 WL 6116491, at \*5 (E.D. Tex. Oct. 13, 2011) (citing *Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex.App. – Austin 2008)).

When a state-filed declaratory judgment action is removed to federal court, it is construed as an action brought under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  *Coleman v. Bank of New York Mellon*, 969 F.Supp.2d 736, 754 (N.D. Tex. 2013).  That Act provides that a federal court may declare the rights and legal relations of any interested party.  The availability of a declaratory judgment depends upon the existence of an underlying judicially remediable right.  *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).  In this case, Plaintiff's request for declaratory relief depends on his potentially viable breach of contract and TDCA claims.  Accordingly, Plaintiff's request for declaratory relief should not be dismissed.  *See*

*Watson v. CitiMortgage, Inc.*, 814 F.Supp.2d 726, 738 (E.D. Tex. 2011) (declining to dismiss the plaintiff mortgagors' declaratory judgment action where they had stated claims against their lender for, *inter alia*, breach of contract). As such, Defendants' *Motion to Dismiss* Plaintiff's claim for a declaratory judgment should be **DENIED**.

### E. Leave to Amend

A court may dismiss a claim that fails to meet the pleading requirements, but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp*., 199 F.3d 239, 248 n.6 (5th Cir. 2000). Plaintiff is proceeding without the assistance of counsel and has not previously been granted leave to amend his claims. Nevertheless, Plaintiff's negligence and unreasonable collection efforts claims fail as a matter of law and are simply incurable. As such, allowing him to file an amended complaint to restate those claims would be futile. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (dismissal with prejudice of a pro se case is appropriate if the court determines that the plaintiff has alleged his best case); *see also McConathy v. Dr. Pepper/Seven Up Corp*., 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).

**F. Conclusion**

For the reasons stated above, Defendants' *Motion to Dismiss*, Doc. 5, should be **GRANTED** as to Plaintiff's claims of negligence and unreasonable collection efforts. In all other respects, Defendants' *Motion to Dismiss*, Doc. 5, should be **DENIED**.

**SO RECOMMENDED** on November 9, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

13